* STEPHEN HALL AND ANOTHER *versus* PAUL GARDNER, JUN., & AL.

Apprentice cannot be assigned by the master, he having a mere personal trust. Parole evidence inadmissible to prove a right to the service of a servant, where the declaration states a title to the service by indenture. Guardians of the *Marshpee* Indians cannot bind the children of those people, except by indenture.

THIS was a special action on the case for *deceit.*

Declaration.—*Paul Gardner, Jun., Thomas Starbuck,* and *Thomas Coffin, Jun.,* were attached to answer to *Stephen Hall* and *Jshua Hall* in a plea of trespass on the case, for that whereas, at *Barnstable,* in the county aforesaid, on the first day of *March,* 1801, the defendants, with one *Moses Mitchell,* who is since dead, were owners of a ship, called the *Trial,* then bound on a voyage to sea; and the plaintiffs were, *by an indenture lawfully made and executed,* entitled to the service of *James Mye,* an *Indian* boy, *for the term of more than five years from and after the said first day of March,* and the said *Paul, Moses, Thomas,* and *Thomas,* then and there, being owners of the same ship, and intending to wrong and deceive the plaintiffs, did falsely and deceitfully affirm and aver to the plaintiffs that the same ship was bound on a skinning voyage to the islands in the *Pacific Ocean,* and from thence, after she should have taken on board a competent and usual number of seal-skins at and on those islands, proceed from thence to *Canton,* in *China,* to sell and dispose of the same; and they, the said *P., M., T.,* and *T.,* being then in want of a crew and hands, as well to navigate the same ship on such a voyage, as to procure such skins at and on the islands aforesaid, for the purposes aforesaid, did request of the plaintiffs to engage the said *James Mye* as a hand on board the same ship, for the said pretended voyage, and to induce them thereto, they, the said *P., M., T.,* and *T.,* did falsely and deceitfully affirm and engage to the plaintiffs that they *would send the [ * **173** ] same ship on a voyage from the island of *Nantucket,* where she then was, to the *Pacific Ocean,* under orders for, and for the purpose of obtaining skins as aforesaid, and to proceed from thence to said *Canton,* there to sell and dispose of the same, and to return from *Canton* back to the *United States,* and that their orders to their *master* should be for the performance of such a voyage, and tnat there should be allowed to the plaintiffs, for the service and time of the said *James Mye,* a one hundredth part of the produce of all the skins so acquired on said voyage, as the same should be sold at *Canton,* which proportion was to be paid to the

plaintiffs, at *Nantucket* aforesaid, as soon as the quantity of such proceeds should be there known. Now, the plaintiffs aver that, trusting to the averments, affirmations, and representations aforesaid of them, the said *P.*, *M.*, *T.*, and *T.*, so made as aforesaid, they did, at the request of the said *P.*, *M.*, *T.*, and *T.*, then and there engage and cause to be shipped on board the same ship, as a hand for the same voyage so proposed as aforesaid, the said *James Mye,* to whose services they were so entitled as aforesaid, and that the same ship sailed from *Nantucket* aforesaid on the voyage, on the fifteenth day of April, in the year last aforesaid, with the said *James* on board, shipped and engaged as aforesaid, and well arrived at the said *Pacific Ocean*, in the month of *December*, in the same year; and there might, at and on the islands there, have been well loaded and freighted for *Canton* aforesaid with seal-skins, procured in the same voyage as aforesaid, to have proceeded to *Canton* with the same as aforesaid. Nevertheless they, the said *P.*, *M.*, *T.*, and *T.*, with an intent to deceive, disappoint, wrong, and defraud the said plaintiffs in the premises, and to deprive them of the benefit, profit, and advantage of a one hundredth part of the skins [ * 174 ] which might be produced in the same voyage and * carried to *Canton*, if the same was pursued according to the affirmations and engagements by them made as aforesaid, did secretly, fraudulently, and deceitfully make, and give to the said *Thomas Coffin, Jun.*, master of same ship, orders to deviate from the same voyage, and, instead of obtaining a competent and usual number of such skins at and on the islands aforesaid, thence therewith to proceed to *Canton* as aforesaid, to take on board the same vessel certain contraband goods, made such by the laws of the *kingdom of Spain*, if brought within his dominions in a bottom of or from the *United States*, with a register of the same, and to proceed with such contraband goods on board the said ship to the dominions of the *king of Spain*, in *South America*, and there to land and sell the same goods, they, the said *P.*, *M.*, *T.*, and *T.*, well knowing that the carrying the same goods, in manner aforesaid, in said ship, to said *South America*, within the dominions of the same *king*, would render the same vessel liable to seizure and condemna tion there, by existing laws there in force, and thereby, if such seizure should take place, break up and destroy the same proposed voyage to *Canton*. The plaintiffs do aver, that the said *Thomas Coffin, Jun.*, master of the same ship as aforesaid, pursuant to the orders aforesaid, did take such contraband goods on board the same ship, and did proceed on the same illicit trade to the dominions of the said *king*, in *South America*, and there arrived on the first day of June, 1802, and did there unlawfully and illicitly attempt to

land, and did land, some of the same goods within the dominions and against the laws of the said *king*, by means whereof the same ship was, by and under his authority, seized, arrested, and condemned there; by means whereof the said voyage for the *Pacific Ocean* to *Canton* was defeated, broken up, and ·lost, altogether by
the fraudulent orders aforesaid, * to take on board and [ * **175** ] carry to *South America* as aforesaid, on an illicit voyage, contraband goods as aforesaid, and by the execution of the same orders as aforesaid; by means whereof the plaintiffs are wholly deprived of the expected and stipulated benefits and profits of a hundredth part of the skins which might have been acquired and sold as aforesaid, and have lost the time, labor, and service of the said *James Mye* from that time to this, all which is to the damage of the plaintiffs (as they say) 200 dollars.

The defendants severally pleaded not guilty, in the Court of Common Pleas. The jury found them all guilty, and assessed damages against them jointly for 100 dollars; upon which judgment was rendered, and the cause brought into this Court by appeal.

The Court intimated, pretty strongly, that the action should have been brought as upon a contract, and not for a *tort*; and they proposed to the counsel for the plaintiffs that they should so amend the declaration as to have it in *assumpsit*.

Upon which the *Attorney-General* (*Sullivan*) said, that, although he was not *now* of counsel in the case, yet he had drawn the declaration himself, and upon the best consideration he was able to give the subject; that he then was, and still continued to be, of the opinion that the present was the only proper mode of declaring, and that he did not think it advisable *so* to alter the declaration. He said that, in declaring upon the subject as a contract, the plaintiffs would be entitled to recover damages only for the non-performance of the undertaking; that is, for a one hundredth part of what might have been reasonably expected as the profits of the voyage which ought, by the contract, to have been performed, but nothing for the loss of the service of the boy; that the *gist* of the action was the fraud and deceit in going a different voyage from that
* which ought to have been made, and in falsely affirming [ * **176** ] that they would perform a certain voyage, when, at the
very time, they intended, and gave orders to the master accordingly, to perform another and a different voyage. The plaintiffs' counsel did not make the amendment proposed by the Court. (1)

(1) Suppose a sum to have been agreed on as liquidated, damages to be paid by the defendants in case of a non-performance of the contract. In such case, the plaintiff would be entitled to recover that precise sum, and of course must bring his action *upon the contract.* It is difficult to perceive how any stipulation in regard to the

To show the right of the plaintiffs to the service of the boy; one part of an indenture was produced, and offered in evidence; by which it appeared, that, on the 21st June, 1793, *Joseph Nye* and *David Parker*, guardians of the *Marshpee* proprietors in the county of *Barnstable*, did bind out to service *James Mye*, son of *Levi Mye*, one of said proprietors, unto *Joshua Hall* (the father of the plaintiffs) and his *heirs*, to serve as an apprentice for the term of ten years from the 18th October then next, being the time when he would arrive to the age of *twenty-one* years.

On the 7th Oct. 1796, *Joshua Hall*, by a writing on the inden ture, under his hand and seal, assigned to *Temperance Hall*, his wife, and to the plaintiffs, all the right and title conveyed to him by the indenture to the service of *James Mye*, until he should arrive to the age of 21 years; they to come into possession of said apprentice immediately after said *Joshua's* decease. *Joshua Hall* and his w fe had both died previous to the 1st of March, 1801, the time when the defendants agreed with the plaintiffs to take the boy on the voyage.

This indenture and assignment the plaintiffs relied on as proving their right to the service of *Mye* by indenture, as alleged in the declaration.

But the Court were unanimous and clear that the binding was to *Joshua Hall*, the father, personally. It was a mere personal trust, and could not be transferred. The assignment was therefore a nullity, and the indenture not admitted to be read to the jury.

[ * 177 ]     *The plaintiffs' counsel then offered to prove, by *parole* evidence, that the boy was their servant *de facto*. The Court ruled unanimously that it could not be *so* proved, *parole* evidence not being admissible where the plaintiff has set out in his declaration a title by indenture.

The counsel for the plaintiffs then moved for leave to amend the declaration, which was granted on the common rule, and it was

*damages* could vary the nature of the action. In this case, the contract between the parties certainly furnished the ground of the action, and the damages were to be assessed upon the principles of the contract. If the ship had obtained the skins, proceeded to *Canton*, and sold them, and had then returned to this country, and the breach of the defendant's contract had been a failure to pay the one hundredth part of the produce of the skins, there can be little doubt that the plaintiffs' right of action, if it existed at all, would be founded upon the contract, and that the measure of damages would be the value of the one hundredth part of the skins, whether more or less than the value of the boy's service. Now, it would seem that *the mode* in which the defend ant had broken his contract cannot convert an action upon that contract to an action of *tort*. If the plaintiffs had made an advantageous bargain, by which they would gain more than the value of the boy's services, they were entitled to the benefit of it ; and so, *vice versa*, if the bargain was beneficial to the defendants, they could not be ousted of that benefit by being sued in an action of tort.

134

accordingly amended by striking out the words (printed in *italics* above) which related to the indenture.

After the declaration had been amended as above-mentioned, the counsel for the plaintiffs stated that the boy, at the time when the defendants contracted with them, was, and a long time previous thereto actually had been in their service, and insisted that, as the declaration now stood, it would be sufficient for them to prove that he was their servant *de facto ;* and they offered to prove the *parole* assent of the guardians of the *Marshpee Indians,* to establish the right of the plaintiffs to the service of the boy, and that those guardians had given their assent to his going the voyage mentioned, as the servant and for the benefit of the plaintiffs.

The evidence offered was objected to, on the ground that the boy, being a minor, and belonging to the *Marshpee Indians,* who were, by the statute of Jan. 30, 1789, (*stat.* 1788, *c.* 38,) put under the guardianship and care of overseers and guardians, could not be bound by the overseers or guardians except by indenture, and, therefore, that the *parole* assent of the guardians was a nullity, and could give the plaintiffs no right to the service of the boy.

To this objection it was answered, that it did not lie with the defendants to deny the fact of his being the servant of the plaintiffs, after the defendants themselves had received him as such, and agreed to be accountable for his service, as stated in the declaration.

*Some of the Court appeared to doubt on the ques-  [ * 178 ] tion before them ; and they said they would consider of it, and give their opinions the next morning.

In the morning, the Court delivered their opinion.

THACHER, J., said he was clear that the evidence was not admissible.  Upon looking into the statute, it appeared that neither the overseers nor guardians could bind the children of these *Indians* in any way but by indenture ; and, therefore, that the *parole* assent of the guardians could give no right to the plaintiffs.

SEDGWICK, J.  As the declaration *now* stands, it does not appear for what length of time the plaintiffs claimed the service of the boy, nothing more being stated than that the plaintiffs, at the time mentioned, were entitled to his service.  And here, although it will not influence the opinion I am about to deliver, yet I cannot avoid mentioning again, that the more I have considered the subject, the more I am convinced that the action ought to have been in contract, and not in *tort.*

In this case, it is agreed that the boy belonged to the *Marshpee tribe,* and the plaintiffs offered to show that he was their servant *de facto* at the time they agreed to let him out in ser-

vice to the defendants, and that the guardians assented to the contract.

The question before the Court depends upon the *act* of the government, which was read by the defendants' counsel.

This act was in force at the time of the transaction, and still continues so.

The first section of the act provides for the appointment of a board of overseers, who are vested, among a variety of other powers, with the power of taking care of the poor, and of binding their children to service, and also of appointing guardians to [ * 179 ] the *Indians*, to carry into execution the *regulations and orders of the overseers. The plaintiffs do not pretend to give evidence of any act of the overseers, but only of the guardians. It is necessary, therefore, to inquire into the authority of the guardians. The boy being a minor, incapable of contracting, the question is, whether the mere assent of the guardians be sufficient.

By the *second section* of the act, the overseers *or* the guardians are vested with power and authority to demand and receive any property, dues, or wages, detained, withheld from, or justly owing to said proprietors, or any of them, by any person or persons ; and to institute, and bring, in their own names and capacities, any action, &c., therefor, or for any *fraud or injury done to them*, and to pursue such actions to final judgment and execution, &c.

The statute is founded in humanity, and although it is intended to curtail these persons, who are freemen, of some rights, yet it is because they are liable, from their weakness, to be imposed on by the arts and designs of the unprincipled and profligate, as expressed, substantially, in the preamble to the act.

The *same* section of the act provides " that the overseers *or* guardians may also bind, *by indenture*, the children of the poor of said proprietors to suitable persons, &c., as the said overseers *or* guardians may judge necessary and convenient."

Here, then, is contained the whole authority of the guardians as to their power of binding any of the *Marshpee Indians*, or proprietors of that plantation, as they are called in the statute. The guardians have power to bind the children of the poor persons by deed. Their power reaches no farther, nor can they bind in any other way. But it is contended that the naked *assent* of the guardians is sufficient to authorize the plaintiffs to send a man round the globe, and bring an action for his service. [ * 180 ] *The position is monstrous, and I have never had any doubt from the moment the statute was read. The evidence offered is inadmissible.

136

HALL & AL. *vs.* GARDNER & AL.

STRONG, J. As the declaration *now* stands amended, the plaintiffs do not claim a right to the service of the boy for any definite term of time; but their counsel insist that he is their servant *de facto*, and that *that* is sufficient against a stranger. The question before the Court is, whether the *parole* assent of the guardians is sufficient to establish the claim of the plaintiffs to the service of the boy. The boy had, in contemplation of law, no *will* of his own. The plaintiffs, therefore, could acquire no right by *his* assent. Had he been bound to them by *indenture*, they would not have had a right to send him to the south pole, to the end of the globe, in their service. The law contemplates no such right in any case, except, perhaps, where the guardians had judged it necessary and convenient to have the person instructed in navigation, and might bind him accordingly. The assent of the guardians, a mere *parole* assent, can be of no avail in a case like the present. It was illegal and void. The statute has clearly pointed out their authority. This authority they must strictly pursue. The statute gives them no authority to bind, except by indenture, and, therefore, the evidence offered is inadmissible. (1)

*Plaintiffs nonsuited.*

*B. Whitman* and *Sproat* for the plaintiffs.

The *Solicitor-General* (*Davis*) and *K. Whitman* for the defendants.

See *Rex* vs. *Swimmer*, *Sayer's Rep.* 103

(1) When a father in *New Hampshire* bound his son an apprentice to a mechanic of that state, and this latter subsequently assigned a portion of the time of the apprentice to a mechanic of this commonwealth, it was holden that such assignment was illegal, and that a note given for that consideration was void.—Post, vol. viii. p. 299, *Davis* vs. *Coburn*.